IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**A.M. by and through next friend,**
**NAKALA MURRY, and NAKALA MURRY**
**PLAINTIFFS**

**v.**                                              **CIVIL ACTION NO.: 4:25-cv-53-JDM-DAS**

**CITY OF INDIANOLA, MISSISSIPPI, and**
**OFFICER GREG CAPERS**
**DEFENDANTS**

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

Since the beginning of this case, Defendants have relied on false assertions regarding Defendant Capers' knowledge and actions to defend his shooting of 11-year-old A.M. Even after Defendant Capers' deposition, which established that his filings and sworn interrogatory answers were false, Defendants have **<u>again</u>** misstated his knowledge and awareness in signed filings before the Court. Defendants' counsel even resorted to threats of physical violence to try to disrupt a deposition where those falsehoods were revealed. But Defendants have yet to take the simple action required by Federal Rule of Civil Procedure 11: revising their false submissions to comply with the rule that "the factual contentions have evidentiary support." The Court should take the necessary steps to ensure compliance with Rule 11 by imposing appropriate sanctions.

## FACTUAL BACKGROUND

This case arises from Defendant Capers shooting eleven-year-old A.M. while responding to a call for service at A.M.'s home on May 20, 2023. Part of Defendants' theory of defense appears to be that Capers acted reasonably in drawing and firing his gun because A.M.'s mother, Nakala Murry, owned a firearm that was present somewhere in the home. Ex. 1 (Millon Decl.) at ¶ 9; Dkt 104-1 (Capers Dep.) at 327:19-329:17. But Capers admitted during his deposition that

he never saw any weapon in Ms. Murry's home on May 20, 2023 or any other date; that he only learned there was a weapon in the home after the Mississippi Bureau of Investigation concluded its investigation; and that Ms. Murry told him the suspect had no weapons before he entered the home. *Id*. at 325:20-326:7, 230:22-231:17.

Capers also admitted at his deposition that he had given false answers under oath in his response to interrogatories. At that deposition, Capers testified that he had recently reviewed his sworn interrogatory answers and that they were true and accurate. Dkt. 104-1 (Capers Dep.) at 16:7-17:6. Under subsequent questioning, he conceded that several of those interrogatory answers were false. *Id.* at 313:4-314:23; 316:21-318:6; 318:10-322:17. Capers' sworn interrogatory responses represented that when he had been to the Murry home before, he had primarily addressed instances Mr. Nolden assaulting Ms. Murry (which was false); that every time he went to the Murry home, a weapon had been involved (which was false); that the suspect was "reasonably believed to be armed" (which was false, or at least highly misleading, because Capers had not received any information that the suspect was armed, and Ms. Murry had told him that the suspect was not armed); and that Capers had spent the "majority" of his time at the training academy learning about domestic disturbances (which was false). *Id.*; *see* Ex. 2 (Capers Interrog. Resps.) at 5-6, 9, 11-12. These were material misrepresentations that went to the heart of Capers' defense.

Concerningly, Defendants' pleadings, **including their response to Plaintiffs' amended complaint filed after the deposition in question and after the falsehoods were brought to Defendants' attention**, have relied on these falsehoods about Capers' prior knowledge of Mr. Nolden. Each document refers to Capers' awareness of "dozens of violent, and sometimes armed" disputes between Ms. Murry and Mr. Nolden. Dkt. 13 (Defs.' Answer to Pls.' Compl.) at

5; Dkt. 60 (Defs.' Mot. for Summary Judgment) at 3, 20; Dkt. 112 (Defs.' Answer to Pls.' First Am. Compl.) at 5. Yet, at his deposition, Capers could only recall one of the incidents he responded to at Ms. Murry's address. Dkt. 104-1 at 162:9-163:10. He also testified that he could not say whether he was thinking about one, more than one, or no prior incidents when he responded to Ms. Murry's house on the night of the shooting. *Id*. at 165:13-166:4.

Further, when Defendant Capers realized that his sworn interrogatory answers were false, he disclaimed knowledge of how the answers were gathered or formulated. Dkt. 104-1 (Capers Dep.) at 314:14-15 ("[A]s to who gathered this information, I'm not sure.); 316:8-10 ("[T]his is not wording that I put together."); 317:19-20 ("But once again, this is not my wording."). Capers' statements that he did not know how his interrogatory answers were prepared indicates Defendants may have violated the Rule that all interrogatories must be answered "by the party to whom they are directed." Fed. R. Civ. P. 33(b)(1)(a).

After Capers testified that several exculpatory answers in Defendants' interrogatory responses were false, the parties went off the record to take a break and defense attorney Danny Griffith threatened Plaintiffs' attorney Wally Hilke with physical violence. *Id.* at 326:3-331:6; Ex. 1 (Millon Decl.). At that time, only Mr. Griffith, Mr. Hilke, and law student Jaelyn Millon remained in the room. Ex. 1 at ¶ 8. Mr. Griffith appeared to grow frustrated that his theory of the case was being undercut by Capers' admissions that he **never** saw a gun in Ms. Murry's home and that Ms. Murry **did** inform him the suspect did not have a gun. He repeatedly, and increasingly loudly, made statements about Ms. Murry's gun. *Id.* at ¶ 9; *see also* Dkt. 104-1 at 328:21-329:17 (Mr. Griffith accusing Mr. Hilke of eliciting false testimony by not asking about Ms. Murry's gun). Mr. Hilke remained calm, but Mr. Griffith stood up, moved closer to Mr. Hilke, and said "Don't you raise your eyebrows at me . . . I'll slap the taste out of your mouth."

3

Ex. 1 at ¶¶ 11-14. When the deposition resumed, Mr. Hilke made a record that during the break Mr. Griffith threatened to slap him in the face. Dkt. 104-1 at 326:23-328:6. Mr. Hilke asked Mr. Griffith several times if he denied making the threat, but Mr. Griffith did not. *Id.* at 327:17-330:14. Ultimately, Mr. Griffith said: "Actually, I don't know what I said, but I know you made the gesture. It went where it went. I wouldn't hit you. Didn't make a move towards you." *Id.* at 330:10-14.

## ARGUMENT

**I. Defendants violated Rule 11 by presenting falsehoods to this Court throughout multiple filings.**

Defendants relied upon several false assertions about Capers' prior knowledge of and interactions with Ms. Murry, her children, and Mr. Nolden when drafting their answer, affirmative defenses, and motion for summary judgment, thereby incorporating their misrepresentations in multiple filings before this Court. *See e.g.*, Dkt. 13 at 5-9; Dkt. 60 at 3; Dkt. 112 at 5, 33, 38; Dkt. 114 (Defs.' Second Mot. for Summry Judgment) at 3. Rule 11 provides that by presenting a motion to the court, an attorney certifies that to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation." As explained in *Childs v. State Farm Mut. Auto. Ins. Co.*, the Fifth Circuit has interpreted this rule to impose an affirmative duty "that the attorney has conducted a reasonable inquiry into the facts which support the document." 29 F.3d 1018, 1024 (5th Cir. 1994). Rule 11 misconduct is evaluated "under an objective standard of reasonableness governed by the 'snapshot' rule, which focuses on 'the instant the attorney affixes his signature to the document.'" *Cordova v. Univ. Hosp. &*

*Clinics, Inc.*, 92 F.4th 266, 273 (5th Cir.) (quoting *Snow Ingredients*, *Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016)). As the standard is objective, rather than subjective, "an attorney's good faith will not, by itself, protect against the imposition of Rule 11 sanctions." *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 264 (5th Cir. 2007).

In their answer to Plaintiffs' complaint, Defendants refer multiple times to Capers' supposed knowledge of "dozens" of violent incidents involving Mr. Nolden at Ms. Murry's address. Dkt. 13 at 5 (stating that the responding officers "were aware that this address had been the scene for dozens of violent, and sometimes armed, disputes involving Nakala Murry and the same suspect"), 36 (asserting the same); Dkt. 112 (Answer to First Am. Compl.) at 5, 33, 38 (same). Defendants similarly relied on these falsehoods multiple times throughout their summary judgment memoranda. Dkt. 60 at 1, 3, 6, 20; Dkt. 114 at 9 n.65 (purporting to incorporate the same falsehoods).

By presenting these falsehoods repeatedly throughout multiple filings with this Court, Defendants' counsel disregarded their Rule 11 affirmative duty to conduct a reasonable inquiry into the facts used to support their filings. *Childs*, 29 F.3d at 1024. Indeed, Plaintiffs became aware that Defendants' representations were inaccurate by reviewing **the same call and arrest records** that Defendants produced in discovery and filed in connection with their Answer. Had Defendants undertaken even a basic inquiry into the documents they relied upon in their filings, these inaccuracies would have been readily apparent. Further, during deposition questioning about Capers' knowledge of Ms. Murry, her children, and Mr. Nolden, it became abundantly clear that Capers had limited knowledge of Mr. Nolden, but knew Ms. Murry had two young children who resided with her and had actually interacted with those children. Dkt. 104-1 at 185:13-189:5. Rule 11's inquiry requirement is particularly important where, as here, the

relevant facts are within the Defendants' own knowledge. Confirming the accuracy of the facts asserted would have required nothing more than basic diligence: reviewing the relevant events with the client and ensuring that both sworn discovery responses and other filings accurately reflected the facts. The deposition revealed multiple crucial falsehoods that suggest that no reasonable inquiry occurred. And most concerningly, Defendants attempted to rely on these falsehoods to obtain summary judgment. If they had succeeded in preventing Plaintiffs from deposing Defendant Capers before summary judgment, *see* Dkt. 69, 70, then those falsehoods might never have been uncovered.

Defendants' counsel compounded this misconduct by making threats during the deposition of Defendant Capers after Capers admitted to the lies contained in his sworn interrogatory responses prepared by Defendants' counsel. Here, defense attorney Danny Griffith threatened Plaintiffs' attorney Wally Hilke with physical harm during an off-the-record break in the deposition, immediately after Capers testified to the fact that Defendants' interrogatory responses contained multiple lies. The only people who remained in the room at the time were Hilke, Griffith, and law student Jaelyn Millon, who explained that Griffith "repeatedly said 'you know she had a gun,' referring to Ms. Murry" and that his "tone grew increasingly louder every time he made this statement." Ex. 1 (Millon Decl.) at ¶ 9. Griffith accused Hilke of acting unethically during the deposition, began to walk toward him, and said, "Don't raise your eyebrows at me." *Id.* at ¶¶ 10-11. Griffith then "stepped very close to Mr. Hilke and leaned over Mr. Hilke" before telling him, "I'll slap the taste out of your mouth." *Id*. at ¶¶ 12-14; Dkt. 104-1 at 327:6-10. Hilke documented the incident on the record once the deposition resumed, and Griffith did not deny it.

This behavior occurred immediately after Capers admitted to the multiple falsehoods that are present in both his interrogatories and in Defendants' filings with this Court, suggesting that Griffith meant to intimidate Plaintiffs' counsel into changing course in the deposition questioning.

## II. Plaintiffs are entitled to appropriate sanctions.

District courts have broad discretion in assessing sanctions under Rule 11. *Indep. Fire Ins. Co. v. Lea*, 979 F.2d 377, 378 (5th Cir. 1992). For example, while a Rule 11 sanction is "limited to what suffices to deter repetition of the conduct," sanctions may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

Accordingly, Plaintiffs respectfully request that the Court order the following sanctions:

1. Strike Defendants' Answer and Motion for Summary Judgment (Dkt. 112 and 114), which rely on falsehoods revealed during Defendant Capers's deposition;
2. Award Plaintiffs their attorney's fees for bringing this motion; and,
3. Provide such other relief as is in the interests of justice.

**Dated:** May 4, 2026.

**RESPECTFULLY SUBMITTED**,

/s/ Graham P. Carner
Graham P. Carner
TreMarcus D. Rosemon
Spencer Cash
401 East Capitol Street, Suite 218
Jackson, MS 39201
Tremarcus@carnerrosemon.com
Graham@carnerrosemon.com
Spencer@carnerrosemon.com
601-427-8999

/s/ Wallace Hilke

7

Wallace Hilke (admitted pro hac vice)
Eliana Green (admitted pro hac vice)
Community Justice and Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611-3609
wally.hilke@law.northwestern.edu
312-503-2224

Ben H. Elson (admitted pro hac vice)
Nora Snyder (admitted pro hac vice)
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070

Counsel for Plaintiffs