**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**A.M. by and through next friend,
NAKALA MURRY, and NAKALA MURRY
PLAINTIFFS**

**v.**                                                            **CIVIL ACTION NO.: 4:25-cv-53-JDM-DAS**

**CITY OF INDIANOLA, MISSISSIPPI, and
OFFICER GREG CAPERS
DEFENDANTS**

**PLAINTIFFS' REBUTTAL MEMORANDUM IN FURTHER SUPPORT OF MOTION
FOR RULE 11 SANCTIONS [DKT. 136]**

Defendants continue to rely on false assertions regarding Defendant Capers' knowledge and actions to defend his shooting of 11-year-old A.M. Rather than correct the record, Defendants respond by insisting that Plaintiffs are "masquerading a baseless academic exercise as a Rule 11 Motion when it is no more than yet another delay tactic lacking in any factual, legal or logical foundation." Dkt. 139 (Defs.' Resp.) at 1. That framing collapses the moment the underlying procedural record is properly understood.

Plaintiffs' motion is not a "delay tactic" because Plaintiffs seek no delay. Plaintiffs **withdraw** any request to strike Defendants' summary judgment motion. Plaintiffs are confident in their pending responses to Defendants' motions and desire to resolve those motions efficiently so that Plaintiffs may have their day in court.[1]

---

[1] Notably, Plaintiffs served their motion for sanctions on Defendants on April 2, 2026—20 days before filing their motion to strike Defendants' oversized summary judgment briefs. Dkt. 136 at 1; Dkt. 123. Plaintiffs were required to file that motion exactly as it was served on Defendants, and so Plaintiffs were not able to change their request for relief in the pending motion despite the Court's ruling on the motion to strike. *See Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 389 (5th Cir. 2022) ("[T]he Rule 11 safe harbor provision requires identicality."). The purpose of the motion for sanctions was not to create delay, but to correct Defendants' misrepresentations in signed filings as revealed over the course of discovery.

1

However, Defendants' substantive arguments in their response do nothing to rebut the core showing made in Plaintiffs' opening memorandum—that Defendants made, and repeatedly re-certified, materially false factual representations in multiple signed court filings. Dkt. 137 at 2-6. Sanctions remain warranted.

## ARGUMENT

### I. Defendants violated Rule 11 by relying on false interrogatories.

#### A. Defendants cannot rehabilitate Capers' admitted falsehoods by invoking his unsworn MBI interview or his post-hoc general denials.

Rule 11 imposes three affirmative duties with which an attorney or litigant certifies compliance by signing a pleading, motion, or other document: (1) that the attorney has conducted a reasonable inquiry into the facts supporting the document; (2) that the attorney has conducted a reasonable inquiry into the law; and (3) that the motion is not interposed for purposes of delay, harassment, or increasing costs of litigation. *Thomas v. Capital Sec. Servs.*, 836 F.2d 866, 874 (5th Cir. 1988) (en banc), *superseded on other grounds by revisions to Rule 11*; *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994). The standard is objective, not subjective. *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 264 (5th Cir. 2007). Good faith alone is not a defense against Rule 11 sanctions. *Id.*; *Childs*, 29 F.3d at 1024.

As set out in Plaintiffs' opening memorandum, Capers' sworn interrogatory responses contained four key misrepresentations, to which he admitted under examination at deposition: (1) that when he had been to the Murry home before, he had primarily addressed instances of Mr. Nolden assaulting Ms. Murry—which was false; (2) that every time he went to the Murry home, a weapon had been involved—which was false; (3) that the suspect was "reasonably believed to be armed"—which was false or at minimum highly misleading, because Capers had not received any information that the suspect was armed, and Ms. Murry told him the suspect was not armed;

2

and (4) that Capers had spent the "majority" of his time at the training academy learning about domestic disturbances—which was false. Dkt. 137 at 2. These false representations were then carried into multiple signed court filings, including the original Answer (Dkt. 13 at 5), the First Summary Judgment Memorandum (Dkt. 60 at 3, 20), and the Amended Answer (Dkt. 112 at 5, 33).

Defendants respond with four arguments, each of which fails.

First, the "numerous" versus "dozens" argument is a false escape. Defendants contend that the challenged sentence uses the word "numerous," not "dozens," and that it refers to the awareness of the officers generally—not Capers specifically—so Plaintiffs are attacking a straw man of their own construction. Dkt. 139 at 8-9. But as demonstrated in Plaintiffs' opening memorandum, the word "dozens" appears expressly in multiple signed filings—including the original City Answer (Dkt. 13 at 5) and the Amended Answer (Dkt. 112 at 5, 33)—and has never been corrected or withdrawn. Defendants cannot point to a later filing that substituted "numerous" while leaving the word "dozens" standing, uncorrected, in the very filings that remain before this Court. More fundamentally, whether you use "dozens" or "numerous," the problem is the same: Capers testified at deposition that before May 20, 2023, he had responded to Ms. Murry's address "[p]robably around two or three times myself," Dkt. 104-1 at 162:5-20, and could not say whether he had in mind any specific incident when he responded on the night of the shooting, *id.* at 165:13-166:4. Two or three personal responses, with no specific incident in mind on the night of the shooting, does not support awareness of either "dozens" or "numerous" violent, armed disputes—which is the relevant issue before the Court.

Second, Capers' unsworn MBI interview does not rehabilitate Defendants' filings—it exposes the overstatement. Defendants place great weight on the MBI interview as the most

contemporaneous account of what Capers knew. Dkt. 139 at 9-11. But that interview was unsworn and not subject to cross-examination. When placed under oath at deposition, Capers could not support the broad generalizations he offered to the MBI. Moreover, the MBI interview itself is far more hedged than the unqualified assertions in Defendants' signed filings. In the interview, Capers said "I've been [there] at least three times myself . . . probably my third or fourth time going there," and on the weapon: "I think one time, if I remember correctly, he had a weapon." *Id.* at 10. "Probably," "I think," and "if I remember correctly" are not the language of certainty. Defendants, by contrast, asserted without qualification that the officers "were aware that this address had been the scene for dozens of violent, and sometimes armed, disputes." Dkt. 112 at 5. The transformation from Capers' hedged, uncertain MBI account to the sweeping unqualified language of the court filings is itself the violation. An attorney conducting a reasonable inquiry would have compared Capers' qualified MBI account against the incident reports and call logs before committing to that unqualified language.

Third, Capers' general deposition statements do not overcome his specific sworn admissions of falsity. Defendants rely on Capers' general statements: "every time—most times we dealt with that couple, a weapon was involved" and "it was always domestic, dangerous, weapon involved." Dkt. 139 at 11-15. But those general statements came before Plaintiffs' counsel walked Capers through his interrogatory answers one by one. When counsel did so, Capers admitted serially—answer by answer, at pages 313-322 of his deposition—that specific representations were false. Dkt. 104-1 at 313:3-314:23; 316:21-318:6; 318:10-322:17. A general "yes, from my recollection" answer cannot survive subsequent specific, itemized admissions of falsity. The Rule 11 standard is objective. *Jenkins, 478 F.3d at 264*. An objectively reasonable inquiry would have reviewed the specific representations with the client.

4

Fourth, Defendants rely on Chief Sampson's testimony, Dkt. 139 at 14-16, but his testimony is irrelevant to what Capers actually knew. The factual contentions at issue concern what the responding officer knew and believed when he responded to the Murry home. Chief Sampson was not there. He did not testify about any specific information Capers had received. His general statement that "our whole department was" familiar with Ms. Murry, Dkt. 113-1 at 220:13-17, cannot supply the evidentiary support that Defendants failed to verify before certifying those factual assertions in court filings.

Ultimately, when Defendant Capers realized that his sworn interrogatory answers were false, he disclaimed knowledge of how the answers were gathered or formulated. Dkt. 137 at 3. Defendants' counsel realized the severity of these admissions—they even threatened Plaintiffs' counsel at Capers' deposition in an apparent attempt to intimidate Plaintiffs' counsel into changing course (an incident that Defendants, yet again, have not denied). These admissions are not mere impeachment evidence—they reveal factual contentions lacking an evidentiary basis. The attorney who certified those answers, and subsequently prepared signed filings based on the record, bore the Rule 11 duty of reasonable inquiry—and by Capers' own account, that duty was not met.

**B.** **Plaintiffs do not seek sanctions for false interrogatories, but for Defendants' signed filings lacking evidentiary support.**

Defendants argue that by its own terms, Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37," and therefore that the portions of Plaintiffs' motion referencing discovery responses are of no relevance. Dkt. 139 at 18. This argument misapprehends Plaintiffs' theory entirely.

Plaintiffs do not seek sanctions for the interrogatory responses themselves. Plaintiffs seek sanctions for the signed court filings—the Answer, the Amended Answer, and the summary

judgment memoranda—that adopted the false narrative established by those responses. Defendants relied upon false assertions about Capers' prior knowledge of and interactions with Ms. Murry, her children, and Mr. Nolden when drafting their answer, affirmative defenses, and motion for summary judgment, thereby incorporating their misrepresentations in multiple filings before this Court. See Dkt. 13 at 5-9; Dkt. 60 at 3, 20; Dkt. 112 at 5, 33. Rule 11(d)'s discovery exemption is simply irrelevant to that theory.

Defendants claim that the interrogatory responses "have never been relied upon in any briefs or pleadings" as "false assertions" in signed filings before the Court. Dkt. 139 at 6. That assertion cannot be squared with the record. The interrogatory answers established a narrative— that every prior call involved a weapon, that the suspect was reasonably believed to be armed, that Capers had extensive experience at the Murry home—and that exact narrative was carried into multiple signed court filings. The vehicle by which counsel transmitted that false narrative into court filings is precisely why the interrogatory responses are relevant for Rule 11 purposes: they show what the prefiling inquiry looked like, and it was plainly inadequate. Moreover, the Fifth Circuit has recognized that under certain circumstances, even "an isolated factual misrepresentation may serve as the basis" for sanctions under Fed. R. Civ. P. 11. *Jenkins*, 478 F.3d at 264. Here, the misrepresentations are not isolated—they are systemic and appear across multiple major signed filings in this case, even after Capers' false responses were revealed at his deposition.

In particular, Defendants' invocation of the "snapshot rule" does not protect them—it confirms their violation. Defendants argue that reasonableness "is reviewed according to the snapshot rule, focusing upon the instant the attorney affixes his signature to the document." *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992); Dkt. 139 at 19-20.

6

That is correct. But as *Childs* makes clear: "if facts are discovered that show that there is no longer a good faith basis for a position taken by a party, a pleading, motion, or other paper signed after those facts come to light reaffirming that position can be the basis of a violation of the rule." *Childs*, 29 F.3d at 1024 n.18 (emphasis added). The most important filing at issue is the Amended Answer—Dkt. 112—signed after the deposition established the falsity of the representations. The snapshot at the moment of signing that pleading is a snapshot taken with full awareness of those falsehoods.

**C. Defendants cannot establish that Capers actually read any report about incidents beyond those he personally responded to—and Plaintiffs' positions are entirely consistent.**

Defendants argue that Plaintiffs are taking inconsistent positions: having previously argued that the reports "do not tell the full story" and that "the only way for Plaintiffs to adequately discover what Capers knew is to allow Plaintiffs to question Capers under oath," Plaintiffs now seek to limit Capers' knowledge to those very reports. Dkt. 139 at 16-17 (citing Dkt. 65 at 1, 3-4; Dkt. 73 at 4-5). There is no inconsistency. Plaintiffs' prior argument was that the documents alone were insufficient to establish what Capers knew, and that his deposition testimony was required to do so. That is exactly what happened. The deposition did establish what Capers knew—and what it revealed was far less than Defendants had represented in their court filings. Plaintiffs are not retreating from their prior position; they are relying on the very evidence they said would be necessary. The deposition is that evidence, and it does not support Defendants' filings.

Moreover, Defendants' argument that Capers learned of incidents through pass-on logs, Dkt. 139 at 14-15, is built on speculation. Capers could not say whether he was thinking about any specific incident when he responded on May 20. Dkt. 104-1 at 165:13-166:4. A vague and

7

general awareness gained from reviewing pass-on logs—to an unspecified degree, on unspecified occasions—does not support the sweeping, unqualified assertions in Defendants' filings. Capers did not testify that he specifically read any particular report about any particular incident involving Ms. Murry and Mr. Nolden that he did not personally respond to, and could not identify a single specific incident beyond his own personal responses.

## II.      The Court should order Defendants to correct the false assertions in their answer and award fees.

Once a district court finds a Rule 11 violation, it must impose some sanction. *Thomas*, 836 F.2d at 876-77. The district court retains broad discretion in fashioning an appropriate sanction; however, that sanction "should be the least severe that adequately furthers the purpose of Rule 11." *Childs*, 29 F.3d at 1024. Plaintiffs' requested sanctions are calibrated to that standard.

Plaintiffs recognize that case-dispositive sanctions—striking an entire pleading or dismissing a case—are the most severe sanctions available and are warranted only in the most egregious circumstances. Accordingly, Plaintiffs do not request that this Court strike Defendants' entire Answer. Instead, Plaintiffs request the more proportionate and targeted remedy of an order requiring Defendants to remove the specific false assertions from their Amended Answer—Dkt. 112—and refile a corrected version. This is a measured and proportionate step for the Court to take, given that Defendants do not defend the "dozens of incidents" language in their amended answer and cannot provide an adequate basis for their other assertions regarding Capers' purported knowledge before he shot A.M.

Such a remedy directly addresses the violation, corrects the false record before the Court, and deters future misconduct, while avoiding the severe case-dispositive consequence of striking

the pleading wholesale. This is precisely the kind of tailored, least-severe remedy contemplated by Rule 11. *See Thomas*, 836 F.2d at 878 ("Sanctions should also be educational and rehabilitative in character and, as such, tailored to the particular wrong."). If the Court concludes that even this targeted relief is disproportionate in light of the specific facts, Plaintiffs defer to the Court's broad discretion and remain open to whatever lesser sanction the Court deems sufficient to deter repetition of the conduct at issue. Fed. R. Civ. P. 11(c)(4).

Further, Rule 11 sanctions may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). The fees Plaintiffs incurred in investigating, briefing, and arguing this motion were a direct result of Defendants' violation. Plaintiffs stand ready to submit appropriate billing records and will limit their request to fees directly caused by Defendants' violation and reasonable in amount.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request the Court grant their motion for sanctions and impose appropriate sanctions on Defendants.

**Dated:** May 6, 2026.

**RESPECTFULLY SUBMITTED**,

<div style="margin-left:50%">

/s/ Graham P. Carner
Graham P. Carner
TreMarcus D. Rosemon
Spencer Cash
Carner & Rosemon, PLLC
401 East Capitol Street, Suite 218
Jackson, MS 39201
Tremarcus@carnerrosemon.com
Graham@carnerrosemon.com
Spencer@carnerrosemon.com
601-427-8999

</div>

9

/s/ Wallace Hilke
Wallace Hilke (admitted pro hac vice)
Eliana Green (admitted pro hac vice)
Community Justice and Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611-3609
wally.hilke@law.northwestern.edu
312-503-2224

Ben H. Elson (admitted pro hac vice)
Nora Snyder (admitted pro hac vice)
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070

Counsel for Plaintiffs